UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| PATRICK GILLESPIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No. 2:24-cv-00160-NT |
| | ) | |
| CIGNA HEALTH MANAGEMENT, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION TO DISMISS**

The Plaintiff Patrick Gillespie sued the Defendant Cigna Health & Life Insurance Company[1] to recover benefits under Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("**ERISA**"). The Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that the Plaintiff is not owed any benefits and the complaint therefore fails to state a claim. For the following reasons, the motion (ECF No. 11) is **DENIED**. The parties may engage in limited discovery and summary judgment motion practice as explained below.

---

[1] I refer to the Defendant throughout this order as Cigna Health & Life Insurance Company ("**Cigna**"), which the Defendant states is the proper entity name. *See* Def. Cigna Health & Life Ins. Co.'s Mot. to Dismiss 1 ("**Mot.**") (ECF No. 11). The Defendant says that the Plaintiff erred by naming "Cigna Health Management, Inc." in the complaint. Mot. 1.

**FACTUAL AND PROCEDURAL BACKGROUND**[2]

## I.    The Plan

The Plaintiff is a Maine resident who suffers from "ambulatory dysfunction" due to an above-knee amputation on the left leg and a below-knee amputation on the right leg. Opp'n to Def.'s Mot. to Dismiss for Failure to State a Claim ("**Opp'n**") 2 (ECF No. 13). He participates in a healthcare benefit plan documented in a booklet dated January 1, 2023. *See* Opp'n Ex. 2 (the "**Plan**") (ECF No. 13-2). The Defendant "is the claim administrator for the Plan for the purpose of benefit determinations."

---

[2]    I draw these facts from the complaint and three other documents: (1) the operative healthcare benefit plan, Opp'n to Def.'s Mot. to Dismiss for Failure to State a Claim ("**Opp'n**") Ex. 2 (the "**Plan**") (ECF No. 13-2); (2) the Defendant's May 12, 2023 notice denying the Plaintiff's request (ECF No. 13-4); and (3) the Defendant's related letter, also dated May 12, 2023, denying the request (ECF No. 21-2).

Though not attached to the complaint, I find that all three documents are nonetheless incorporated by reference because they are " 'central to the [P]laintiff's claim,' " " 'sufficiently referred to in the complaint,' " and their "authenticity . . . [is] not disputed by the parties.' " *Newman v. Lehman Bros. Holdings Inc.*, 901 F.3d 19, 25 (1st Cir. 2018); *see also Summersgill v. E.I. Dupont de Nemours & Co.*, No. 13-CV-10279, 2014 WL 1032732, at *6 n. 4 (D. Mass. Mar. 18, 2014) ("Plaintiff has incorporated by reference . . . the Summary Plan Description, an excerpt of which the Plaintiff attached to the complaint, and the authenticity of which the parties do not otherwise dispute."); *Femino v. Sedgwick Claims Mgmt. Servs., Inc.*, No. CV 20-11373-FDS, 2021 WL 3190817, at *1 n.2 (D. Mass. July 28, 2021) (considering, on a motion to dismiss, a benefits document not attached to the complaint because the plaintiff's ERISA claim "depend[ed] on it"). Because I can evaluate the motion to dismiss without relying on the Plaintiff's medical records, Opp'n Ex. 3 (ECF No. 13-3), I need not consider whether they are also incorporated by reference.

Regarding the Plan's authenticity, the Plaintiff takes issue with the fact that the Defendant originally submitted an outdated document from 2022 that does not govern this dispute. Resp. to Def.'s Reply to Pl.'s Opp'n to Mot. to Dismiss 1 (ECF No. 21-1). However, the Defendant has since corrected that error and agrees that "the January 1, 2023 plan document is the operative document." Def.'s Resp. in Opp'n to Pl.'s Mot. for Leave to File Surreply 3 (ECF No. 22). Regardless, both versions contain identical language on the relevant issues. Accordingly, the Plaintiff does not meaningfully dispute the Plan's authenticity.

2

Compl. ¶ 3. The Plan is otherwise "sponsored by" the Plaintiff's employer[3] Beacon Sales Acquisition, Inc. ("**Beacon**"). Compl. ¶ 1[4]

The Plan summarizes all covered benefits, *see* Plan 32–42 (listing "Covered Expenses"), and explains that "[i]n general, health services and benefits must be Medically Necessary" to be covered, Plan 63; *see also* Plan 76 (defining "Medically Necessary/Medical Necessity"). Covered expenses are subject to specific "Exclusions, Expenses Not Covered, and General Limitations." Plan 50. As relevant here, the Plan covers some prosthetic appliances and devices, Plan 36, but it excludes:

- external and internal power enhancements for external prosthetic devices; or
- microprocessor controlled prostheses and orthoses; and
- myoelectric prostheses and orthoses,

Plan 37 (the "**Exclusion**"); Compl. ¶ 14.

The Plaintiff alleges that the Plan is "funded through an insurance policy" that the Defendant "issued" to Beacon. Compl. ¶ 2. He further alleges that the Plan requires the Defendant to "pay for covered expenses." Compl. ¶ 8. However, those allegations are at odds with the following notice in the Plan:

> This is not an insured benefit plan. The benefits described in this booklet or any rider attached hereto are self-insured by Beacon Sales Acquisition, Inc. which is responsible for their payment. [Cigna] provides claim administration services to the plan, but Cigna does not insure the benefits described.
>
> This document may use words that describe a plan insured by Cigna. Because the plan is not insured by Cigna, all references to insurance shall be read to indicate that the plan is self-insured. For example, references to "Cigna"

---

[3]    The Plaintiff calls Beacon Sales Acquisition, Inc. ("**Beacon**") his "employer" in the Complaint. Compl. ¶ 1. He calls Beacon his "former employer" in his opposition brief. Opp'n 1.

[4]    These allegations are consistent with a section of the Plan called "ERISA Required Information," which calls the Plan "a healthcare benefit plan," states its name as "Beacon Sales Health & Welfare Plan," and identifies Beacon as the "sponsor." Plan 69.

"insurance company," and "policyholder" shall be deemed to mean your "employer" and "policy" to mean "plan" and "insured" to mean "covered" and "insurance" shall be deemed to mean "coverage."

Plan 5; *see also* Plan 73 (defining "Employer" as "the plan sponsor self-insuring the benefits described in this booklet, on whose behalf Cigna is providing claim administration services").

## II.    The Plaintiff's Benefits Request

In 2023, the Plaintiff requested coverage for a microprocessor prosthetic device recommended by his doctor. Compl. ¶¶ 12–13. On May 12, 2023, the Defendant denied the request. Compl. ¶ 14; Opp'n Ex. 4, at 1–2 (ECF No. 13-4) (the "**Denial Notice**"). The Denial Notice states that the Plan "simply does not cover these services, no matter what the reason is that they are being requested." Denial Notice 2. The Plaintiff appealed, and the Defendant "upheld its determination." Compl. ¶¶ 15–16.

## III.    The Plaintiff's ERISA Claim and the Maine Prosthetics Law

The Plaintiff filed this lawsuit on May 6, 2024. *See* Compl. He states a single claim under ERISA § 502(a)(1)(B),[5] Compl. ¶¶ 6–7, which allows a participant or beneficiary to bring an action "to recover benefits" under a plan governed by the statute, 29 U.S.C. § 1132(a)(1)(B). The Plaintiff concedes that the Exclusion's plain language bars coverage of the microprocessor device he seeks, Opp'n 1–2, but he

---

[5]    The Plaintiff has clarified that his sole claim arises under ERISA's "civil enforcement provision" under Section 502(a)(1)(B) and that he brings no state law causes of action. Opp'n 4; Def. Cigna Health & Life Ins. Co.'s Reply Br. in Further Supp. of Its Mot. to Dismiss Pl.'s Compl. 3 (ECF No. 20) ("[T]he parties are in agreement that ERISA, and not state law, controls the inquiry here."). Accordingly, I need not consider the Defendant's argument that ERISA preempts the Plaintiff's "state law causes of action." *See* Mot. 4–5.

4

asserts that the Exclusion "must be stricken" because it violates a Maine insurance law concerning prosthetic devices, Opp'n 3. That Maine law requires any insurance carrier to cover the prosthetic device "determined by the enrollee's provider . . . to be the most appropriate model that adequately meets the medical needs of the enrollee." M.R.S. 24-A § 4315(2) (the "**Maine Prosthetics Law**").

The Plaintiff argues that because the Maine Prosthetics Law makes the Plan's Exclusion invalid, the Defendant's denial of the Plaintiff's coverage request was "unreasonable and contrary to the medical evidence." Opp'n 3. He seeks a judgment ordering the Defendant "to approve and cover" the device he seeks and to provide "all benefits due under the Plan and Policy." Compl. 4.

## IV.    The Defendant's Motion to Dismiss

The Defendant moved to dismiss the complaint under Rule 12(b)(6) for failure to state a claim, arguing that because the Plan is "self-funded"—*i.e.*, funded by Beacon, not the Defendant—the Maine Prosthetics Law is preempted by ERISA and does not govern the Plan at all. Def. Cigna Health & Life Ins. Co.'s Mot. to Dismiss ("**Mot.**") 1–2 (ECF No. 11). The Defendant contends that because the Maine law at issue does not apply to the Plan, the Exclusion is valid, the Plaintiff is not owed any benefits, and the complaint therefore fails to state a claim. Mot. 4–7.[6]

---

[6]    After the Defendant moved to dismiss the complaint, the Plaintiff filed an opposition brief (ECF No. 13), and the Defendant filed a reply (ECF No. 20). The Plaintiff then sought leave to file a surreply (ECF No. 21), attaching a copy of his surreply (ECF No. 21-1). The Defendant filed a brief opposing the Plaintiff's request and addressing the surreply's merits (ECF No. 22). Finally, the Plaintiff filed a reply to the Defendant's opposition (ECF No. 23). Though surreplies generally are disfavored, *In re Light Cigarettes Mktg. Sales Pracs. Litig.*, 832 F. Supp. 2d 74, 78 (D. Me. 2011), I have considered the Plaintiff's proposed surreply in this case, along with the corresponding response and reply. The Plaintiff's motion for leave to file a surreply (ECF No. 21) is therefore granted.

## LEGAL STANDARD

In evaluating a motion to dismiss under Rule 12(b)(6), I " 'accept the complaint's well-pleaded facts as true and indulge all reasonable inferences therefrom in the plaintiff's favor.' " *Newman v. Lehman Bros. Holdings Inc.*, 901 F.3d 19, 23 (1st Cir. 2018) (brackets and internal citation omitted). I may also consider " 'documents attached to or fairly incorporated into the complaint,' 'facts susceptible to judicial notice,' and 'concessions in [the] plaintiff['s] response to the motion to dismiss.' " *Cheng v. Neumann*, 51 F.4th 438, 441 (1st Cir. 2022) (internal citations omitted). "[W]hen a written instrument contradicts allegations in the complaint . . . , the exhibit trumps the allegations." *Id.* at 445 (internal citation omitted).

"Based on these materials, [I] assess whether there are sufficient facts 'to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true.' " *Newman*, 901 F.3d at 25 (internal citation omitted). Dismissal is warranted " '[i]f the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture.' " *Id.* (internal citation omitted).

## DISCUSSION

To state a claim under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), the relief sought must "flow from the terms of the Plan," *Guerra-Delgado v. Popular, Inc.*, 774 F.3d 776, 781 (1st Cir. 2014). Here, the scope of the Plan's terms depends on whether the Exclusion is valid, which turns on whether the Maine Prosthetics Law applies to the Plan or is preempted by ERISA. If the Maine law applies, then the

6

Defendant cited an improper basis for denying the Plaintiff's request for coverage. But if ERISA preempts the Maine law, then the Plan excludes coverage of the device the Plaintiff seeks, and his complaint therefore fails to state a claim.[7]

## I.    ERISA's Preemption Framework

As relevant here, ERISA preempts "any and all State laws" that "relate to any employee benefit plan." 29 U.S.C. § 1144(a) (the "**Preemption Clause**"). ERISA Section 514(b)(2)(A) (the "**Saving Clause**") creates an exception to the general preemption rule by "restor[ing] to the states the power to enforce state laws that 'regulate[ ] insurance.' " *Bergin v. Wausau Ins. Cos.*, 863 F. Supp. 34, 36 (D. Mass. 1994) (quoting 29 U.S.C. § 1144(b)(2)(A)); *see also Harvey v. Machigonne Benefits Adm'rs*, 122 F. Supp. 2d 179, 185 (D. Me. 2000) ("ERISA does not preempt the authority of the States to regulate insurance."). Section 514(b)(2)(B) (the "**Deemer Clause**") then creates an exception to the Saving Clause by stating that no employee benefit plan "shall be deemed to be an insurance company" or "engaged in the business of insurance" for the purpose of any state law "purporting to regulate insurance companies [or] insurance contracts." 29 U.S.C. § 1144(b)(2)(B). *See generally FMC Corp. v. Holliday*, 498 U.S. 52, 57 (1990) (discussing ERISA's Preemption, Saving, and Deemer Clauses). Put simply, "federal law governs employer benefits plans, while state law regulates insurance." *Harvey*, 122 F. Supp. 2d at 183.

---

[7]    My analysis makes several assumptions not disputed by the parties: (1) that the Maine Prosthetics Law, if it applies to the Plan, would in fact invalidate the Plan's exclusion of prosthetic devices (the "**Exclusion**"); (2) that the Exclusion is valid so long as the Maine Prosthetics Law does *not* apply; (3) that the Defendant is a "carrier" within the meaning of the Maine Prosthetics Law; and (4) that the Exclusion, if valid, would in fact bar coverage of the Plaintiff's microprocessor device.

Though the Deemer Clause refers generally to *all* "employee benefit plan[s] described in section 1003(a)," 29 U.S.C. § 1144(b)(1)(B), the Supreme Court has held that whether that clause applies depends on whether the health plan is (1) insured by the employer (*i.e.*, the employer funds benefits by buying a group health insurance policy from an insurance company); or (2) "self-funded" (or "self-insured") (*i.e.*, the employer uses its own funds to pay benefits), *FMC Corp.*, 498 U.S. at 61. If a plan is insured, then it falls within the scope of the Saving Clause, and "a State may regulate [that plan] indirectly through regulation of its insurer." *Id.* at 64. By contrast, if a plan is self-funded, it may not be "deemed" insurance, and "the State may not regulate it." *Id.*

As a result, "[t]he Saving and Deemer Clauses result in the curious—even unfair—disparate treatment of self-funded and insured ERISA plans, the latter being capable of some state regulation and the former being free of nearly all state oversight." *Am.'s Health Ins. Plans v. Hudgens*, 915 F. Supp. 2d 1340, 1362 (N.D. Ga. 2012), *aff'd*, 742 F.3d 1319 (11th Cir. 2014) (citing *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 747 (1985)).[8] *See generally Massachusetts v. U.S. Dep't of Health & Hum. Servs.*, 923 F.3d 209, 218 (1st Cir. 2019) (state laws "do not apply to self-insured plans"); *Harvey*, 122 F. Supp. 2d at 185 (while insured plans "often must comply with state insurance laws," self-funded plans "generally are exempt").

---

[8]     *See also FMC Corp. v. Holliday*, 498 U.S. 52, 65 (1990) (Stevens, J., dissenting) (critiquing the majority for "draw[ing] a broad and illogical distinction between benefit plans that are funded by the employer (self-insured plans) and those that are insured by regulated insurance companies (insured plans)"); Erin C. Fuse Brown & Elizabeth Y. McCuskey, *Federalism, ERISA, and State Single-Payer Health Care*, 168 U. Pa. L. Rev. 389, 430 (2020) (describing how "ERISA preemption catalyzed the growth of self-funded plans by opening a loophole through which employers could provide their employees with health benefits and avoid state insurance regulation").

## II.    Whether ERISA Preempts the Maine Prosthetics Law

The parties do not dispute—and I agree—that: (1) the Plan is an "employee welfare benefit plan" under ERISA, 29 U.S.C. § 1002(1); (2) the Maine Prosthetics Law "relate[s] to any employee benefit plan" and would therefore be preempted by ERISA, unless an exception applies, *id.* § 1144(a); and (3) the Maine Prosthetics Law "regulates insurance" and would therefore be "saved" from preemption under the Saving Clause (and therefore subject to state insurance regulation), unless an exception—such as the Deemer Clause—applies, *id.* § 1144(b)(2)(A). In other words, if the Plan is insured, then it is subject to state insurance laws. But if it is self-funded, then it may not be "deemed" insurance, which means that ERISA preempts state law, and the Maine Prosthetics Law does not apply. *See Massachusetts*, 923 F.3d at 218; *Harvey*, 122 F. Supp. 2d at 185. Therefore, the only question before me is whether the Plan is self-funded.

Here, the Plaintiff asserts that the Plan is "funded through an insurance policy" "issued" by the Defendant, Compl. ¶ 2, and that the Defendant "pay[s] for covered expenses," Compl. ¶ 8. But these assertions are contradicted by the Plan's notice stating that it is "self-insured" by Beacon, that the Defendant "does not insure the benefits described," and that any references to insurance "shall be read to indicate that the plan is self-insured." Plan 5; *see also* Plan 73 (identifying Beacon as "the plan sponsor self-insuring the benefits described in this booklet").

Ordinarily, "when a written instrument contradicts allegations in the complaint . . . , the exhibit trumps the allegations." *Cheng*, 51 F.4th at 445 (internal citation omitted); *Schatz v. Republican State Leadership Comm.*, 777 F. Supp. 2d 181,

189 (D. Me. 2011) (same). But determining whether a health plan is self-funded or insured for purposes of ERISA preemption is not always straightforward.[9] And here, the Plan is not exactly a model of clarity. For example, the introductory notice states that although the Plan is "not insured by Cigna," it nonetheless "may use words that describe a plan insured by Cigna." Plan 5; *see also* Plan 5 ("[R]eferences to 'Cigna' 'insurance company,' and 'policyholder' shall be deemed to mean your 'employer' and 'policy' to mean 'plan' and 'insured' to mean 'covered' and 'insurance' shall be deemed to mean 'coverage.' "). For these reasons, I agree with the Plaintiff that, without discovery, he lacks the information needed to clarify the dispositive issue of the Plan's funding status.

## CONCLUSION

For the reasons set forth above, I **DENY** the Defendant's motion to dismiss (ECF No. 11) without prejudice to renewal as a Rule 56 summary judgment motion limited to the question of whether the Plan is self-funded, following the completion of

---

[9]    *See, e.g.*, *Zell for Est. of Zell v. Neves*, 423 F. Supp. 3d 231, 240 (D.S.C. 2019) ("[T]he court issued a text order instructing to the parties to clarify their positions regarding whether the benefit plan is a self-insured/self-funded plan."); *Seifts v. Consumer Health Sols. LLC*, 61 F. Supp. 3d 306, 315 (S.D.N.Y. 2014) ("[S]ome Defendants began telling . . . members and health care providers seeking payment that the FleetCare Plan was self-funded, knowing that such statements were incorrect and misleading . . . ."); *see also* Guy O. Kornblum & Matt Garretson, 1 Negotiating and Settling Tort Cases § 16:18 (Feb. 2009) (stating that "[i]t is wise to verify a plan's claim to ERISA preemption" because "[i]nnocently or not, it is not uncommon for these declarations to be incorrect"); Russell Korobkin, *The Battle Over Self-Insured Health Plans, or "One Good Loophole Deserves Another*,*"* 5 Yale J. Heath Pol'y L. & Ethics 89, 95 (2005) ("[F]ew employees know whether their [employer health care benefit plan] is insured or self-insured."); *cf. Cambridge Mut. Fire Ins. Co. v. Wesoja*, No. 2:22-CV-00363-NT, 2024 WL 2749600, at *6 (D. Me. May 29, 2024) (quoting the First Circuit's statement that when interpreting a "follow form" provision in an insurance policy, "it would be 'a mistake to assume precision in such terminology' ") (quoting *Insituform Techs., Inc. v. Am. Home Assurance Co.*, 566 F.3d 274, 278 n.3 (1st Cir. 2009)).

limited, expedited discovery on that question. The parties are hereby permitted to engage in limited discovery and summary judgment motion practice as follows:

1.  The parties will conduct discovery solely on the issue of whether the Plan is self-funded or insured by February 28, 2025.

2.  If the Defendant believes the evidence supports its claim that the Plan is self-funded, it may renew its motion to dismiss as a limited Rule 56 motion for summary judgment by March 14, 2025.

3.  If the Defendant files a summary judgment motion, the Plaintiff may file a response within seven (7) days of the Defendant's motion, and the Defendant may then file a reply within seven (7) days of the Plaintiff's response.

4.  Both parties may file affidavits or sworn testimony in support of their briefs. However, no surreply briefs are permitted.

5.  The answer deadline and all discovery deadlines are stayed during this discovery and motion period. If the Defendant decides not to file a Rule 56 motion, it must promptly notify the Clerk, and the stay will be lifted.


SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 27th day of January, 2025.